DOWNEY, Chief Judge.
Appellant, First Federal Savings & Loan Association of The Palm Beaches, hereafter referred to as First Federal, seeks to reverse a final judgment in favor of appellee, Sailboat Key, Inc., hereafter referred to as Sailboat, requiring First Federal to return a $70,000 standby fee paid by Sailboat in conjunction with a mortgage loan application which never reached fruition.
The issue presented for our determination is whether the record supports the trial judge’s finding that Sailboat was entitled to a return of the standby fee it paid because First Federal never gave Sailboat a formal loan commitment. The final judgment contains no findings of fact but we must presume from the judgment in favor of Sailboat that the court found First Federal failed to make the necessary commitment.
The facts as gleaned from the record reflect that Sailboat contemplated developing a large condominium complex in Dade County. In order to secure the financing Sailboat engaged the services of The Mortgage Corporation of America, which was successful in obtaining a commitment for the interim financing from Bank of America for $55,000,000. This loan was contingent upon Sailboat’s securing permanent financing or end loan commitment to the extent of $21,000,000. To that end Sailboat negotiated with Chase Federal Savings & Loan Association and Citizens Federal Savings & Loan Association of Miami and First Federal Savings & Loan Association of The Palm Beaches, located at West Palm Beach. Chase and Citizens committed themselves for $7,000,000 each and the dispute in this case involves the question of whether First Federal committed itself for the other $7,000,000.
The negotiations between The Mortgage Corporation of America, Sailboat’s agent, and First Federal commenced sometime pri- or to May 1972. Through oral communications and letters various discussions and proposals were had culminating in a letter dated December 14, 1972, from J. E. Tyng, Senior Vice-President of First Federal, to George G. Fehl, Vice-President of The Mortgage Corporation of America. Therein First Federal advised that, pursuant to The Mortgage Corporation’s request, First Federal “was considering an allocation of $7,000,000 of mortgage loans” to purchasers in Sailboat Key. Numerous conditions were delineated, among which was the following:
“Commitment Fee: In the event a formal commitment is entered into, the Lender will establish a nonrefundable commitment fee which shall be due and payable by the developer at the time the formal commitment is made. The amount of the commitment fee and the length of the commitment shall be determined at that time by the Lender in its sole discretion.”
The foregoing letter closed with the following admonition:
The foregoing terms and conditions may vary and shall be dependent upon the then existing market conditions and the availability of the Lender’s funds, based on its sole determination. This letter shall not be construed as a firm commitment by the Lender and the parties acknowledge that there shall be no firm commitment until such time as the Lender and the developer enter into a firm mortgage agreement in connection with the above referred to project.
On March 29, 1973, Fehl wrote to First Federal seeking to avoid paying the standby fee, and suggesting as an alternative that in processing individual loan applications Sailboat would direct the purchasers to First Federal for closings in accordance with the conditions set forth in First Federal’s letter of December 14, 1972. Fehl acknowledged the indefinite nature of such arrangement indicating that The Mortgage Corporation knew Sailboat would not then have a firm commitment for $7,000,000.
On June 15, 1973, Thomas K. Ireland, Chairman of the Board of The Mortgage Corporation of America, wrote to Citizens Federal requesting that, pursuant to a prior conversation, Citizens acknowledge its “intent to commit letter of September 24,1972 [would] become a firm commitment upon a *627 receipt of a 1% ($70,000) nonrefundable standby fee.” Ireland stated that he was forwarding a copy of that same letter to First Federal, also requesting an acknowledgment that its December 14, 1972 letter would become a firm commitment upon receipt of the 1% standby fee.[1]
First Federal wrote The Mortgage Corporation on July 9, 1973 that “this letter will firm our intention to commit for $7,000,000 of the mortgage loans as outlined in our letter of December 14, 1972.” Said letter further advised that the commitment would remain effective through August 31, 1973, but if a check in the amount of 1% had not been received as of that date, the commitment would expire; pursuant to the terms of the letter, receipt of the 1% fee would hold the mortgage money until December 31, 1974.
Then on July 11, 1973, The Mortgage Corporation requested that First Federal extend the August 31 date for tendering the standby fee until September 15, 1973. This would coincide with an extension from Citizens as well as the anticipated closing date with BankAmerica.
On July 13, 1973, The Mortgage Corporation requested First Federal to confirm the oral understanding that First Federal would continue to hold the funds available after December 31, 1974, upon payment by the borrowers of one-half of 1% for each of the six months. This request also was granted on July 16, 1973.
In a letter dated July 31,1973, The Mortgage Corporation sought a further extension until September 30, 1973. Said letter also stated that The Mortgage Corporation had forwarded to the interim lenders for approval First Federal’s letter of July 9, 1973, and “commitment of December 14, 1973.” Further, it was acknowledged that The Mortgage Corporation intended to remit the required nonrefundable fee “to firm up this commitment.”
No answer to The Mortgage Corporation’s letter of July 31, 1973 appears in the record. However, on September 11, 1973, The Mortgage Corporation wrote First Federal enclosing the 1% standby fee and stating:
Pursuant to our conversation of today and the terms of your commitment letter of December 14, 1972, as well as your modification letter of July 9, 1973 and July 16, 1973 (two), we are pleased to attach thereto the standby fee ($70,000) required. Your commitment, as modified, is considered to be in full force and effect.
Later, on October 4, 1973, The Mortgage Corporation wrote First Federal as follows:
Pursuant to our conversations, I should like to attempt to make our position clear as it relates to the commitment and modifications thereto in the amount of $7,000,-000 issued by your institution on the referenced.
We consider the commitment to be accepted, with the $70,000, called for having been forwarded and received by you prior to the expiration date contained in said commitment. We are satisfied and can live with the commitment and modifications thereto in its present form.
If you desire to extend the acceptance date provided for in your modification letter of July 16, 1973 from September 15, 1973 to January 15, 1974, and accordingly return our $70,000. check, this will be agreeable. Under this arrangement we would merely execute and accept the commitment some time between now and said January 15th date and re-tender you the $70,000 payment.
First Federal responded on October 5, 1973 by returning The Mortgage Corporation’s check for $70,000 and suggesting The Mortgage Corporation might wish to make other arrangements for financing inasmuch as First Federal could not assure them of a satisfactory loan percentage on each mortgage. This letter prompted a response from The Mortgage Corporation on October 11, 1973, which we quote in pertinent part:
*628 I am really at a loss to understand your letter of October 5th (and returned $70,-000.00 check) concerning the referenced. I have made it clear to you, both on the phone and in writing pursuant to my letter of October 4th, that the Borrower has accepted your commitment and posted the necessary standby fee within the time limits provided in said commitment. The Borrower and the interim lender, BankAmerica, consider this commitment accepted and finalized.
As an accommodation to you, the interim lender and the Borrower, have agreed that if you wish to extend the acceptance date of your commitment from September 15, 1973 to January 15, 1974, this would be acceptable. In this event, the Borrower would merely accept the commitment some time between now and January 15th and then post the necessary standby deposit.
In any event, we are perfectly satisfied with the commitment and your institution. Therefore, I would appreciate confirmation that the commitment is in full force and effect, or if you prefer, a letter extending the acceptance date of same to January 15, 1974.
I am attaching hereto the $70,000.00 standby fee originally sent to you on September 12th.
Thereafter, on October 18, 1973 First Federal wrote The Mortgage Corporation that it had received the check, assumed The Mortgage Corporation was satisfied with the percent of loan to value, and advised that all previous letters were in effect. And so ended the pertinent correspondence.
It appears that subsequent to the aforesaid correspondence the national economy suffered a substantial downturn, which had a drastic effect upon the salability of condominium units and the availability of mortgage money. The Bank of America never closed the construction loan, the improvements were never constructed and consequently, First Federal never closed any of the contemplated mortgage loans.
Several years later, Sailboat commenced this suit against First Federal to recover the standby fee because it was alleged that First Federal never issued a “firm mortgage agreement which was a pre-condition to the effectiveness of” the December 14, 1972 letter. Sailboat contended that one of the reasons the construction loan was not closed was because First Federal would not give Sailboat a formal commitment or, as it was termed in the complaint, a “firm mortgage agreement,” which was satisfactory to the interim lender, BankAmerica. The chairman of the board of The Mortgage Corporation testified that after the letter of October 18, 1973 from First Federal, he made several oral requests for a formal commitment letter to give to BankAmerica, but it was not forthcoming.
As we read this record, the trial judge’s finding is contrary to the manifest weight of the evidence. It 3eems clear to us that although the parties originally were negotiating on the basis that eventually a formal commitment would be issued, by October 18th the parties had changed the original proposal and it was clearly understood that First Federal had agreed to commit itself to lend up to $7,000,000. Mortgage Corporation’s letter of June 15, 1973 specifically requested First Federal to acknowledge that its December 14,1972 letter was a firm commitment. Thus, on July 9, 1973 First Federal advised The Mortgage Corporation that it would lend $7,000,000 as outlined in its letter of December 14,1972 if by August 31, 1973 The Mortgage Corporation forwarded the 1% standby fee. There were later negotiations for extensions, etc., but the later correspondence confirms that The Mortgage Corporation knew the commitment was firm. For example, on October 4, 1973, The Mortgage Corporation stated:
We consider the commitment to be accepted, with the $70,000, called for having been forwarded and received by you prior to the expiration date contained in said commitment. We are satisfied and can live with the commitment and modifications thereto in its present form.
Then again on October 11, 1973, somewhat exasperated, The Mortgage Corporation’s Board Chairman wrote First Federal saying:
*629 I have made it clear to you, both on the phone and in writing pursuant to my letter of October 4th, that the Borrower has accepted your commitment and posted the necessary standby fee within the time limits provided in said commitment. The Borrower and the interim lender, BankAmerica, consider this commitment accepted and finalized. [Emphasis supplied]

In any event, we are perfectly satisfied with the commitment and your institution. Therefore, I would appreciate confirmation that the commitment is in full force and effect, or if you prefer, a letter extending the acceptance date of same to January 15, 1974.

First Federal responded that all previous letters were in effect, meaning the commitment was firm. The foregoing letter of October 11th belies Sailboat’s testimony at trial that one of the causes of the failure of this project was First Federal’s unfounded refusal to give Sailboat a formal commitment so that it could be produced for Ban-kAmerica. In its letter of July 31st The Mortgage Corporation advised that they were sending First Federal’s letter of July 9th and “commitment of December 14, 1972” to the interim lenders for approval. Then on October 11, 1973, The Mortgage Corporation advised that “the Borrower and the interim lender, BankAmerica, consider this commitment accepted and finalized.”
In his testimony at trial on cross examination, Mr. Ireland stated that BankAmeri-ca would not close with the First Federal commitment as it stood. Counsel then read Ireland an answer from his deposition as follows:
“A. First Federal at that time refused to give any cooperation in making any changes of any type to satisfy anybody, but ultimately Bank of America was satisfied to accept their informal commitment or preliminary commitment as written. So it ultimately became acceptable to Bank of America in an effort to fulfill the requirements imposed in the Bank of America commitment, to close out their loan.”
Ireland acknowledged that the statement was correct but sought to make the distinction that he was referring only to the “business aspects” of the December 14, 1972 letter. The proof showed that pursuant to its commitment, First Federal set aside $7,000,-000 to meet its end of the bargain, but Sailboat’s deal fell through with BankAm-erica. Even Sailboat’s witness had to agree that the overriding cause of the failure of this project was the economic recession of that period.
In view of the foregoing, it appears the trial judge misconstrued the legal effect of the evidence in awarding judgment for Sailboat. Accordingly, the judgment appealed from is reversed and the cause is remanded with directions to enter judgment for First Federal.
Reversed and remanded, with directions.
BERANEK, J., and CROSS, SPENCER. C., Associate Judge, concur.

. It appears the parties had previously agreed the amount of the standby fee would be 1% of the amount of the mortgage commitment, or $70,000.